**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **CLOVIS HUNTER,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | ) **Case no. 4:11cv01832 TCM** |
| | ) |
| **JAY CASSADY**, the Warden of the | ) |
| Jefferson City Correctional Center, | ) |
| | ) |
| and | ) |
| | ) |
| **CHRIS KOSTER**, the Attorney General | ) |
| of the State of Missouri, | ) |
| | ) |
| **Respondents.**[1] | ) |

## MEMORANDUM AND ORDER

This matter is before the Court for review and final disposition of a petition for writ of

habeas corpus filed by Clovis Hunter ("Petitioner") pursuant to 28 U.S.C. § 2254 to challenge

a 2002 judgment following a non-jury trial.[2]  Respondents filed a response [Doc. 9] to the

petition, including materials from the underlying state court proceedings [Docs. 10 and 16].[3]

Petitioner presents four grounds for relief in his petition: that his confession was

coerced, that the evidence and description of the suspect did not describe Petitioner, that his

---

[1] Petitioner is reportedly incarcerated at the Jefferson City Correctional Center (JCCC), where Jay Cassady is now the warden.  Therefore, the Court will substitute Jay Cassady for the originally named Respondent.  See Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  Because Petitioner is subject to consecutive sentences imposed by the trial court for the conviction he is challenging in this federal habeas proceeding, the Court will also add as a named Respondent Chris Koster, the Attorney General of the State of Missouri.  See Rule 2(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

[2] This matter is before the undersigned United States Magistrate Judge on consent of the parties.  28 U.S.C. § 636(c).

[3] The Court will require that the state trial court's legal file, Resp'ts Ex. A, be kept under seal as it contains a complete date of birth and other personal information for each victim.

trial attorney provided ineffective assistance of counsel, and that he was deprived of his right to testify.

After careful consideration, the Court will deny the petition upon finding that the first three grounds are procedurally defaulted and Petitioner has failed to demonstrate cause and prejudice or actual innocence so as to permit consideration of the merits of those grounds; and upon concluding that the fourth ground lacks merit.

## Background

Petitioner was charged with one count each of attempted forcible rape in violation of Mo. Rev. Stat. § 564.011, attempted second-degree robbery in violation of Mo. Rev. Stat. § 564.011, and first-degree burglary in violation of Mo. Rev. Stat. § 569.160, for an incident involving a woman the Court will refer to by her initials, E.T., on October 26, 1999. Counts I, II, and III, respectively, of the Second Am. Information, filed June 17, 2002, Legal File, Resp'ts Ex. A, at 92-93. Petitioner was also charged with one count each of forcible rape in violation of Mo. Rev. Stat. § 566.030, armed criminal action in violation of Mo. Rev. Stat. § 571.015, and first-degree burglary in violation of Mo. Rev. Stat. § 569.160 for an incident involving a woman the Court will refer to by her initials, C.S., on September 23, 1999. Counts IV, V, and VI, respectively, of the Second Am. Information, filed June 17, 2002, Legal File, Resp'ts Ex. A, at 93-94.

During the five-day trial to the court sitting without a jury in June 2002, the State presented fifteen witnesses including E.T.; C.S. and her mother and teen-aged daughter, who were living with C.S. in September 1999; the doctors who examined C.S. and E.T. shortly after the incidents at issue in this case; and numerous police officers with the St. Louis Metropolitan Police Department who investigated the incidents, including Akil Smith and Michael Mayo

who were partners investigating the offense involving E.T.  See Trial Tr. Resp'ts Ex. I.  In relevant part Officer Smith testified to a canine search of E.T.'s home on October 26, 1999 after learning from E.T. that a person was inside her home; the dog's indication that a person was in a first floor closet near the kitchen; Officer Smith's view of a leg in that closet; the dog's three approaches to the person in the closet; the person's (Petitioner's) exit from the closet and resisting of arrest by Officer Smith; and Officer Smith getting Petitioner to the ground during a struggle which resulted in Officer Smith's tie and name plate ending up on the floor rather than staying on his shirt.  Id. at 541-70.  After Officer Smith got Petitioner under control, he gave Petitioner his Miranda rights, and Petitioner apologized and said his friends left him there. Id. at 570-72, 574-76.  After Petitioner was handcuffed and in the process of being taken to the EMS transfer van, which is used when a suspect resists arrest and when a dog is involved, id. at 575-76 and 582, Petitioner stated that he "burglarized the residence looking for cash and jewelry.  When he couldn't find anything and [E.T.] returned shortly after he got in there, he decided to rob her thinking she probably had some more money on her than he found in the home." Id. at 576-77, 581.  Petitioner also stated that he got in E.T.'s home "through the rear basement doorway [that] was unlocked." Id.

Officer Mayo, who was at the scene with Officer Smith, testified to what he observed at E.T.'s home, essentially agreeing with Officer Smith's testimony about the dog stopping at the closet, the dog attempting several times to get the person out of the closet, and the physical altercation between Petitioner and Officer Smith as Petitioner resisted arrest.  Id. at 650-64. Officer Mayo also stated that, after Petitioner was read his Miranda rights, Petitioner "apologized and said his friends left him in the house." Id. at 663.

Both Officer Smith and Officer Mayo stated that a few pieces of E.T.'s jewelry were

found in the pocket of pants Petitioner was wearing at the time of his arrest.  Id. at 575, 664.

Marc Johnson, who lived next door to E.T. at the time of this incident, and Christopher Chaney, were also charged with respect to the incident involving E.T.  They each testified to their and Petitioner's conversations and actions regarding the incident, and stated that, in exchange for their truthful testimony against Petitioner and their guilty pleas to the burglary charges they would receive probation as the sentence on the burglary conviction, while the related rape and robbery charges would be dismissed.  Id. at 737-82; 782-823.

The State also read from the medical report of Petitioner's condition on October 26, 1999, after leaving E.T.'s home, which stated he was "fit for confinement" in that he was "alert, awake and oriented"; and he had three dog bites and a laceration on an eyebrow but no "loss of consciousness," "no active bleeding," and "no obvious fracture."  Id. at 737.

Mary Beth Karr, a criminalist with the St. Louis Metropolitan Police Department Crime Laboratory who performed DNA analysis on garden gloves allegedly worn by the perpetrator during the incident involving C.S., testified that Petitioner was the major contributor to the DNA found on those gloves.  Id. at 709-11.   Additionally, Petitioner's videotaped statement regarding the incident involving C.S. was played during trial.  See, e.g., id. at 313.

Petitioner did not testify and presented the testimony of Javoris Mitchell, a friend of Petitioner who testified that he was with Petitioner the evening of September 23, 1999, and visited the scene after learning Petitioner was arrested on October 26, 1999.  Id. at 886-917. Petitioner also presented the testimony of his mother, Katrina White.  Id. at 917-51.

The trial court denied in part and granted in part Petitioner's motion to suppress, id. at 973-78; found Petitioner guilty of the charged offenses, id. at 1015-16; and sentenced Petitioner to a term of imprisonment totaling twenty-seven years, id. at 1049-50, Sentence and J., filed

Aug. 23, 2002, Legal File, Resp'ts Ex. A, at 134-38. More specifically, the trial court sentenced Petitioner to terms of imprisonment of fourteen years for the attempted forcible rape conviction, two years for the attempted second-degree robbery conviction, and eight years for the first-degree burglary conviction for the offenses involving E.T., with those sentences running consecutively to each other and concurrently with the sentences imposed on the three convictions for the offenses involving C.S. Id. The trial court also sentenced Petitioner to terms of imprisonment of fourteen years for the forcible rape conviction, five years for the armed criminal action conviction, and eight years for the first-degree burglary conviction for the offenses involving C.S., with those sentences running consecutively to each other and concurrently with the sentences imposed on the three convictions for the offenses involving E.T. Id.

Petitioner presented one point in his direct appeal. Pet'r Br., Resp't Ex. B, at 9, 10. Petitioner argued that his rights to due process, freedom from self-incrimination, and a fair trial under the Fifth, Sixth, and Fourteenth Amendments were violated by the trial court's overruling of Petitioner's motion to suppress statements and the trial court's admission, over objection, of Petitioner's statements to Officer Akil Smith that were made upon Petitioner's arrest. In particular, Petitioner contended, that his waiver of his Miranda rights was not knowing and intelligent and his statements were involuntary and coerced because they were made "moments after [Petitioner] suffer[ed] dog bites and blows to the head." **Id.**

The Missouri Court of Appeals for the Eastern District affirmed the conviction and sentence in a summary order, supplemented by a memorandum sent only to the parties setting forth the reasons for the decision. Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Nov. 25, 2003, Resp't Ex. D. In its decision, the

state appellate court found:

> [Petitioner] argues that he was unable to validly waive his <u>Miranda</u> rights due to physical injuries incurred while resisting arrest. When viewing the facts in the light most favorable to the verdict, it appears that when police responded to [E.T.]'s home, [Petitioner] was hiding in her closet. Police were unsure of whether he was armed. A canine unit was used in an effort to remove him from the closet. He emerged from the closet after the dog's third attempt to remove him. When he came out of the closet, he swung at Officer Smith and tried to take the officer's gun. A struggle ensued during which [Petitioner] again attempted to remove Smith's gun and struck or attempted to strike him. Smith struck [Petitioner] in the face and struck him on the arm with his flashlight. Ultimately, Smith was able to gain control over [Petitioner] by kicking his feet out from under him, causing him to fall to the floor. During the struggle, Smith's nameplate and tie were torn off of his uniform. Smith handcuffed [Petitioner], patted him down and read him his rights. Smith testified that [Petitioner] appeared to understand his rights. When asked whether he understood, [Petitioner] stated "yeah" or "uh-huh" and nodded. [Petitioner] then made several statements, some of which were spontaneous and others were in response to Smith's questions. [Petitioner] characterizes this as a "vague waiver."

> The trial court did not issue findings, but we may infer from its denial of the motion to suppress that it found the testimon[y] of Officers Smith and Mayo credible. We find that the record supports the conclusion that [Petitioner] was read his rights and understood them. The state met its burden with the officers' testimony. Furthermore, the record is devoid of evidence indicating that coercion or force was used to obtain the statements. [Petitioner] presented no evidence suggesting that he was not capable of understanding his rights.

> Next we address whether the waiver was rendered invalid by injuries [Petitioner] suffered. Initially we note that constitutional protection is afforded to individuals who suffer injustices as a result of state action. *See generally* <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986). [Petitioner]'s minor injuries were not directly caused by state action, rather, he initiated a struggle with police while resisting arrest. He argues that the pain and disorientation he suffered as a result of his resisting arrest prohibited him from validly waiving his rights.

> The injuries [Petitioner] suffered at the hands of Officer Smith were in self-defense, not the result of a calculated effort to elicit information from him. Further, when [Petitioner] was taken to the hospital, immediately following his arrest, he was "alert, awake[,] and oriented." The medical records indicated that he had not lost consciousness, was not bleeding, and had no medical problems

at that time. Even if we were convinced that [Petitioner] was confused and disoriented following his arrest, which we are not, his post-arrest condition would not be sufficient to invalidate his waiver. Evidence that a defendant is surprised or emotional when arrested is not sufficient to render a confession involuntary. <u>State v. Fakes</u>, 51 S.W.3d 24 (Mo. [Ct.] App. 2001). Neither will disorientation or confusion at the time of the alleged waiver per se cause exclusion of inculpatory statements. [<u>State v. ]Clarkston</u>, 963 S.W.2d [705,] 716 [(Mo. Ct. App. 1998)]. Similarly, we hold that disorientation or confusion caused by injuries sustained while resisting arrest is not sufficient to render a waiver invalid. It is well-settled that a "defendant does not have the constitutional right to confess his crime only when totally rational and properly motivated." [<u>State v. ]Knese</u>, 985 S.W.2d [759,] 766 [(Mo. 1999) (en banc)] (internal citations omitted).

Finally, regardless of the court's overruling [Petitioner]'s motion to suppress the statements he made after his arrest for the crimes committed against [E.T.], there was sufficient evidence otherwise to convict him. Namely, he was apprehended in her home right after she escaped his custody, her possessions were found when he was searched incident to arrest, and his friends testified against him regarding his plans to burglarize her home and take her possessions. The court's decision was not clearly erroneous.

Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Nov. 25, 2003, Resp't Ex. D, at 3-5 (twenty-first alteration in original). The Missouri Court of Appeals issued its mandate in Petitioner's direct appeal on December 22, 2003. <u>See</u> docket sheet for **State v. Hunter**, No. ED81736 (Mo. Ct. App. filed Sept. 3, 2002) (docket sheet available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited Mar. 11, 2015). Petitioner did not seek further review by higher courts. <u>See</u> <u>id.</u>

Petitioner then filed a pro se post-conviction motion, setting forth three claims for relief, that his trial attorney "did not call all [his] witnesses concerning [his] whereabouts during the supposed crime"; that C.S. gave conflicting statements regarding the time of the attack, the weapons used, and the build of the attacker; and that E.T. described an attacker who did not fit

Petitioner but did fit his co-defendant.  Pet'r Pro Se Post-Conviction Mot., Legal File, Resp'ts

Ex. E, at 4-9.  By an amended motion filed by Petitioner's appointed attorney, Petitioner set

forth two claims that his trial attorney provided ineffective assistance of counsel, and requested

an evidentiary hearing.  Pet'r Am. Post-Conviction Mot., Legal File, Resp'ts Ex. E, at 14-27.

First, Petitioner argued that his trial attorney failed to advise him that it was "his ultimate

decision whether to take the witness stand in his own defense." **Id.** at 16.  Petitioner also urged

that his trial attorney advised him to waive a jury and have a bench trial before the trial court

heard and resolved his motions to suppress statements and to suppress evidence, and before the

attorney knew what evidence would be admitted at trial.  **Id.**

A judge other than the judge who had presided over Petitioner's criminal trial

proceedings presided over Petitioner's post-conviction motion proceedings.  After a two-day

evidentiary hearing at which Petitioner's trial attorney and Petitioner testified, the post-

conviction motion court denied Petitioner's motion.  See Findings of Fact, Conclusions of Law,

and Order, filed Apr. 13, 2010, Legal File, Resp'ts Ex. E, at 31-41; Evidentiary Hr'g Tr., Resp'ts

Ex. J.  With respect to the claim that Petitioner's trial attorney had not advised Petitioner that

it was his decision whether or not to testify, the motion court stated:

## FINDINGS OF FACT

1. [Petitioner]'s trial counsel . . . testified at the hearing . . . that she had
been an attorney since 1994 and had practiced criminal defense law since 1995.
Counsel estimated that she had tried fifty to sixty cases.  She represented
[Petitioner] in this bench trial before the Honorable Michael Calvin in July 2002.
[She] testified that she recalled quite a bit of the State's case against [Petitioner].
There were two separate incidents and two victims.  With respect to [C.S.], the
State alleged [Petitioner] had broken into her home in the middle of the night and
raped her.  With respect to [E.T.], the State alleged that [Petitioner] broke into

her home, that she came home, [that Petitioner] sexually assaulted her and [that] he was found in the closet by police officers. Trial counsel believed that there were co-defendants who testified against [Petitioner] at trial with respect to [E.T.]'s case. In the case involving [C.S., Petitioner] had made a video taped confession and there was DNA evidence placing him at the scene. [Petitioner's trial attorney] testified that prior to trial she discussed with [Petitioner] whether he would testify. She told him that because of the detailed video taped confession and because of the DNA in the incident involving [C.S.], that he needed to testify and explain why he made the detailed video confession and also to testify that he did not rape [C.S.]. With respect to the incident in the home of [E.T., Petitioner's trial attorney] stated that they could not dispute that he was in there and she felt that he needed to explain why he was in the closet and testify that he had not sexually assaulted her. [Petitioner's trial attorney] testified that she and [Petitioner] had a lot of discussions regarding whether he should testify. She advised [Petitioner] that he should testify at trial and informed him that it was his ultimate decision. Counsel testified she had represented him over a period of time because there was a time [when Petitioner] was hospitalized, that he was not comfortable testifying, and that he had told her various different stories about what had happened. [Petitioner]'s story changed a number of times. On one occasion he indicated he had had consensual sex with [C.S.] and had been at her home which was why his DNA was in the gloves. On another occasion he indicated he was not there and there were going to be alibi witnesses. Later he did not remember what happened. She felt because there was a detailed video taped confession, and the defense was that the confession was not true, that it would help if he took the stand and explained why he made the statement. When asked whether [Petitioner] told her he wanted to testify she stated that while they were in trial [Petitioner] said he did not want to get on the stand, that he felt she had done a good job with the police officers, and that he was having trouble remembering. Additionally, he wanted to put his mother on the stand as an alibi witness but he had told counsel previously that he had left the house so he was concerned that one of his versions of what happened would contradict his mother, so he made the decision not to testify. . . . On cross-examination [Petitioner's attorney] testified that she had multiple conversations with [Petitioner] about his right to testify, in which she made it clear that it was his choice and she offered her opinion that she wanted him to testify, but ultimately it was up to him. At the time of trial they disagreed about his testifying, she wanted him to testify and he did not want to testify. He did not think it was necessary and said she had done a good job on cross-examination of the officers. [Petitioner] could not recall certain things and did not want to testify. Additionally, [Petitioner] saw how he would be subject to cross-examination. [Petitioner's attorney] reiterated that she had multiple conversations with [Petitioner]. . . .

2. [Petitioner] testified that he met with his attorney approximately two times prior to trial and that there had not been much discussion regarding his testifying. Counsel did not tell him it was his right to testify. The trial strategy was for his counsel to show that his confession was not in his words but rather the words of the police and that he was forced to confess. Counsel did not say that he needed to explain why his DNA was in the glove or why he was in the closet. He wanted to testify because he was not involved and his co-defendant got off, and he felt he did not get off because he did not testify. With respect to the incident involving [C.S.], he would have testified that her description of the attacker was not of him. Regarding the DNA in the gloves, he would have testified that it was either impossible or that it came from the swab the police took from him. [Petitioner] testified that the police attacked him, threatened him and his family and that he was scared for his life and so he did what he was told to do. Regarding the . . . incident [involving E.T.], he would have testified that he was not alone, that the whole plan was made up by Mark Johnson, that Johnson told [Petitioner] that he had been watching [E.T.]'s house and knew when no one was home, that they would go in when no one was home and that Johnson said [E.T.] had a lot of money. [Petitioner] hid because he could not find a way out of the house. Regarding the attempted sexual assault, he would have testified that he never saw [E.T.] because he was in the closet by the time she came through the door and that when he saw the car lights he looked for a way out and would have pleaded guilty to breaking and entering. On cross-examination [Petitioner] testified he did not think they talked about the second home. [Petitioner] denied having memory problems from his past use of PCP. On redirect he testified that he told his trial counsel he wanted to testify regarding his version, how the police coerced his confession[,] and that he did not know how his DNA got on the glove. On recross-examination [Petitioner] acknowledged that he did not raise the issue of wanting to testify in his pro se [post-conviction] motion and testified that he had not included it because he did not know he had the right to testify.

CONCLUSIONS OF LAW

*   *   *

2. The first allegation in [Petitioner]'s amended motion is that his trial counsel failed to inform [Petitioner] that it was his ultimate decision whether to take the witness stand in his own defense. It is alleged that [Petitioner] wanted to testify at his trial but that he was told that he could not take the stand in his own defense. [Petitioner] contends that if trial counsel's strategy was to keep him off the witness stand because he was a prior offender, then the strategy was neither reasonable nor sound because it was a judge-tried case. [Petitioner] alleges that he was told by his counsel that she did not think his testimony would

benefit his defense.

> An attorney's refusal to let [a defendant] testify would warrant relief in a post-conviction proceeding. Brown v. State, 882 S.W.2d 154, 156 (Mo. [Ct.] App. . . . 1994). In order to be entitled to relief the [post-conviction] movant must establish that if he were put on the stand there would be a reasonable doubt concerning his guilt. Van v. State, 764 S.W.2d 690, 691 (Mo. [Ct.] App. 1988). Movant must allege what his testimony would have been and how it would have aided him. The mere assertion that movant told his attorney that he wanted to testify is insufficient. State v. Starks, 856 S.W.2d 334 (Mo. banc 1993); Goforth v. State, 775 S.W.2d 231 (Mo. [Ct.] App. 1989).

> The Court finds that the testimony of [Petitioner]'s trial counsel that she discussed with [Petitioner] whether he would testify at trial, that she believed he needed to testify given the circumstances of the two cases, and that ultimately [Petitioner] decided not to testify, was credible. Additionally, the Court finds trial counsel's concern that [Petitioner] had difficulty remembering events at times and was reluctant to testify to be credible. [Petitioner] has not established by credible evidence that his trial counsel refused to let him testify. The Court further finds that trial counsel's concerns and advice were reasonable under the circumstances of the instant case. This allegation is denied.

Findings of Fact, Conclusions of Law, and Order, filed Apr. 13, 2010, Legal File, Resp'ts Ex. E, at 32-33, 35-37, 38-39. The motion court's factual findings are supported by the testimony at the evidentiary hearing. See Evidentiary Hr'g Tr., Resp'ts Ex. J.

In his only point on post-conviction appeal, Petitioner contended his rights to due process and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's failure to inform him that it was his ultimate decision whether to take the witness stand in his own defense, which precluded him from exercising his fundamental right to testify at trial. Pet'r Br., Resp'ts Ex. F, at 10, 12.

The Missouri Court of Appeals for the Eastern District affirmed the motion court's decision in a summary order, supplemented by a memorandum sent only to the parties setting

forth the reasons for the decision. Per Curiam Order and Mem. Supplementing Order

Affirming J. Pursuant to Rule 84.16(b), dated June 7, 2011, Resp'ts Ex. H. In its opinion, the

state appellate court found:

> After the case was assigned to a new judge, the motion court held an
> evidentiary hearing. [Petitioner]'s trial counsel . . . testified that, prior to trial, she
> informed [Petitioner] that she believed he should testify in order to explain his
> videotaped confession about C.S. and why he was found in a closet at E.T.'s
> residence, and that he should testify that he did not sexually assault E.T. Her
> advice to [Petitioner] was that he should in fact testify at trial. She informed
> [Petitioner] that it was his "ultimate decision to make." She testified that she and
> [Petitioner] had "a lot" of discussions about that, but that "[Petitioner] wasn't
> comfortable testifying" and that, over the course of her representation,
> [Petitioner]'s story concerning both incidents continued to change. However, she
> thought he needed to testify because the defense was that his confession was not
> true. While they were in trial, [Petitioner] said he did not want to testify.
> Counsel explained [Petitioner]'s decision not to testify as follows:

>> A. He said that he felt I had done a good job with the
>> police officers. He said he was having trouble remembering and
>> that he did not want to get on the stand. Also, he wanted me to put
>> his mother on the stand as an alibi witness, and he had told me
>> previously that he had in fact left the house. And so, you know, he
>> was concerned that one of his versions of what happened would
>> contradict his mother then coming in and testifying, so he made the
>> decision not to testify.

> She added that one of the reasons she and [Petitioner] had decided on a bench
> trial was because [Petitioner] was nervous about testifying and he would only
> have to testify in front of one person in a bench trial. On cross-examination,
> counsel testified that in each of the multiple conversations she had with
> [Petitioner] "it was made obvious to [Petitioner] that it was his choice," that she
> gave him her opinion that she wanted him to testify, and that ultimately the
> decision to testify was up to him.

> [Petitioner] also testified at the evidentiary hearing. He testified that he
> and trial counsel "didn't have much discussion about testifying." He added,
> "[S]he told me that I wouldn't be testifying. She told me not to testify." He
> further testified that trial counsel did not inform him that it was his decision
> whether to testify, that he did not know that he had the right to testify, that trial

counsel did not tell him she thought he should testify, and that he wanted to testify.

Following the evidentiary hearing, the motion court entered its findings, conclusions and order denying [Petitioner]'s 29.15 motion. In its conclusions of law, the court found trial counsel's testimony to be credible, making the following specific findings:

> The Court finds that the testimony of [Petitioner]'s trial counsel that she discussed with [Petitioner] whether he would testify at trial, that she believed he needed to testify given the circumstances of the two cases, and that ultimately [Petitioner] decided not to testify, was credible. Additionally, the Court finds trial [counsel]'s concern that [Petitioner] had difficulty remembering events at times and was reluctant to testify to be credible.

The motion court also found that trial counsel's concerns and advice to [Petitioner] were reasonable. With respect to [Petitioner]'s testimony, it specifically found that [Petitioner] did not establish by credible evidence that trial counsel refused to allow [Petitioner] to testify.

For his sole point relied on, [Petitioner] contends that the motion court clearly erred in denying his claim that trial counsel was ineffective in failing to inform him that the decision to testify at trial on his own behalf was [Petitioner]'s "ultimate decision," thus not allowing [Petitioner] to exercise his right to testify at trial. He further asserts that, had he known this, he would have testified in his own defense.

Our review of the motion court's order is limited to a determination of whether the motion court's findings and conclusion s are clearly erroneous. Rule 29.15(k); Christeson v. State, 131 S.W.3d 796, 798-99 (Mo. banc 2004). The findings and conclusions of the motion court are clearly erroneous only if, after reviewing the entire record, we are left with a definite and firm impression that a mistake has been made. Rule 29.15(k); Christeson, 131 S.W.3d at 798-99.

To prevail on a claim of ineffective assistance of counsel, a [post-conviction] movant must show that: 1) counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and 2) movant's defense was prejudiced by counsel's poor performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Hall, 982 S.W.2d 675, 680 (Mo. banc 1998) . . . . A movant bears the burden of proving his claims by a

preponderance of the evidence. Rule 29.15(i); <u>Jackson v. State</u>, 205 S.W.3d 282, 285 (Mo. [Ct.] App. 2006).

[Petitioner] has failed to prove by a preponderance of the evidence that counsel failed to inform him that it was [his] decision whether to testify at trial. The motion court found credible trial counsel's testimony that she discussed this decision with [Petitioner], that she believed he should testify, and that [Petitioner] himself chose not to testify. The motion court did not find credible [Petitioner]'s testimony that counsel refused to allow him to testify. The motion court is entitled to believe counsel's testimony and disbelieve [Petitioner]'s testimony. <u>Rousan v. State</u>, 48 S.W.3d 576, 585 (Mo. banc 2001); <u>Watts v. State</u>, 248 S.W.3d 725, 732 (Mo. [Ct.] App. 2008); <u>see also</u> <u>Jackson</u>, 205 S.W.3d at 287. We defer to the motion court's credibility determinations. <u>Watts</u>, 248 S.W.3d at 732. There was no credible evidence to support [Petitioner]'s claim that trial counsel failed to inform him that it was [Petitioner]'s ultimate decision to testify at trial, and, therefore, [Petitioner] failed to show that counsel was ineffective. Point one is denied.

<u>Conclusion</u>

The motion court did not clearly err in denying [Petitioner]'s 29.15 motion. The judgment of the motion court is affirmed pursuant to Rule 84.16(b).

Mem. Supplementing Order Affirming J. Pursuant to Rule 84.16(b), dated June 7, 2011, Resp'ts Ex. H, at 3-5 (footnotes omitted) (fifteenth alteration in original).

Petitioner then filed his federal habeas petition setting forth four grounds for relief. Petitioner first argues that his confession was coerced because "police officers in central booking ph[y]sically and verbally attacked [him], [and] threaten[ed his] life [and] the lives of [his] mother . . . and brothers." For his second ground for relief, Petitioner urges that "the evidence and description of the suspect" did not describe him. Next, Petitioner contends that his trial attorney was ineffective for failing to argue that there was "no positive ID from victims, [failing to argue that there were] inaccurate descriptions" and for failing to call "most of [his] witnesses as to [his] whereabouts." For his fourth and final ground for relief, Petitioner

contends that he was deprived of his right to testify because his trial attorney failed to inform him that it was his choice whether or not to testify.

Respondents counter that the first three grounds are procedurally defaulted, Petitioner has not demonstrated cause and prejudice or actual innocence to avoid the procedural defaults, and therefore those grounds may not be considered on their merits. As to the fourth ground for relief, Respondents urge that claim lacks merit.

## Discussion

Procedural Default. In his first ground, Petitioner seeks relief because his confession was coerced by "police officers in central booking [who] ph[y]sically and verbally attacked [him], [and] threaten[ed his] life [and] the lives of [his] mother . . . and brothers." Respondents argue that this ground is procedurally defaulted because its factual basis is different from the coercion claim Petitioner presented on direct appeal and this claim has not been presented to the state courts.

In ground two, Petitioner seeks relief because the evidence and description of the suspect does not describe Petitioner. In his third ground, Petitioner urges his trial attorney provided ineffective assistance of counsel in failing to argue that there was no positive identification from the victims, in failing to argue that there were inaccurate descriptions of the suspect, and in failing to call most of Petitioner's witnesses about his whereabouts. Respondents respond that these two grounds are procedurally defaulted because, although Petitioner may have presented these claims in his pro se post-conviction motion, Petitioner did not present them in his amended post-conviction motion and did not raise them in either his direct appeal (for the

second ground) or his post-conviction appeal (for the third ground).

To avoid procedurally defaulting on a claim, a Petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. **Wemark v. Iowa**, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting, in part, Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam)); accord **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." **Wemark**, 322 F.3d at 1021 (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)). A petitioner must also exhaust his state remedies, by giving "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." **Grass v. Reitz**, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). Claims that have not been exhausted and fairly presented to the state courts are procedurally defaulted and may not be considered on their merits by a federal habeas court. See **Wemark**, 322 F.3d at 1022-23.

Here, the coerced confession claim in ground one of Petitioner's federal habeas petition is based on facts different from the facts supporting the coerced confession claim raised in Petitioner's direct appeal. In Petitioner's federal habeas petition, the coerced confession claim is based on conduct of police officers at "central booking." In the direct appeal, Petitioner focused his coerced confession issue instead on the circumstances surrounding his removal

from a closet in E.T.'s home and altercation there with the arresting police officer. Because

Petitioner did not present the same factual grounds for his coerced confession claim in the state

courts and in his pending federal habeas petition, Petitioner has not fairly presented his present

coerced confession ground for relief.

With respect to grounds two and three, Petitioner has not properly pursued those claims

in the state courts. Missouri state law requires the raising of constitutional claims at the first

available opportunity in the state court proceedings. See **In re T. E.**, 35 S.W.3d 497, 504 (Mo.

Ct. App. 2001). The Court construes the claim in ground two as focusing on trial court error

in the admission of evidence or the sufficiency of the evidence. Alleged trial errors, including

constitutional claims of trial error, must be raised on direct appeal; for "[p]ost-conviction

motions cannot be used as a substitute for direct appeal or to obtain a second appellate review."

**State v. Clark**, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); accord **State v. Twenter**, 818

S.W.2d 628, 636 (Mo. 1991) (en banc) (a post-conviction proceeding "is not a substitute for

direct appeal, and matters that properly should have been raised by direct appeal may not be

litigated in a post-conviction proceeding"). "If the allegations of trial error are constitutional

violations, they are not cognizable [in a post-conviction proceeding] unless exceptional

circumstances are shown which justify not raising the constitutional grounds on direct appeal."

**Clark**, 859 S.W.2d at 789; accord **Amrine v. State**, 785 S.W.2d 531, 536 (Mo. 1990) (en

banc); **Allen v. State**, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995) (per curiam). Therefore, if

an alleged violation of the constitution through trial error is not raised on direct appeal, the

claim is defaulted absent exceptional circumstances justifying the failure to raise the error on

direct appeal, and, only if such circumstances are shown, may the matter then be pursued in a post-conviction proceeding.  Here, Petitioner failed to pursue on direct appeal any claim that the evidence was insufficient regarding the identification of him as the offender, and has not established any exceptional circumstances justifying that failure.  Petitioner does not now have a state court remedy for presentation of the claim in ground two and, therefore, that claim  is procedurally defaulted.

The earliest point and exclusive procedure for raising a claim that an attorney provided ineffective assistance of counsel, such as the claim in ground three, is in a post-conviction motion; a motion court's decision on such motions are subject to appeal; and successive post-conviction motions are not permitted.  Mo. S. Ct. Rule 29.15(a), 29.15(k), and 29.15(l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006).  Claims that should have been but were not presented in a post-conviction motion or on appeal from a denial of a post-conviction motion are procedurally defaulted and may not be considered in a federal habeas proceeding.  <u>See</u> **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding that claims not presented in an amended Rule 29.15 post-conviction motion or appeal from the denial of that motion are procedurally defaulted).

The instances of Petitioner's trial attorney's alleged ineffectiveness set forth in ground three of Petitioner's federal habeas petition were not set forth in Petitioner's amended post-conviction motion and, therefore, were not before the motion court.  <u>See</u>, <u>e.g.</u>, **Leach v. State**, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000) (a pro se allegation not included in the amended post-conviction motion, either through attachment of the pro se motion to the amended motion

or through restatement of the claim in the body and text of the amended motion, is "not properly before the motion court"). Petitioner also did not present any such claim in his post-conviction appeal. (See Pet'r Br., Resp't Ex. F.) Under the circumstances, Petitioner has not complied with Missouri's requirements for the presentation to the state courts of the ineffective assistance of counsel claim in ground three of his federal habeas petition; Petitioner does not now have a state court remedy for presentation of such a claim; and that ground for relief is, therefore, procedurally defaulted. See **Interiano**, 471 F.3d at 856; **Sweet v. Delo**, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (finding one of the petitioner's ineffective assistance of counsel claims defaulted because it was not presented at any stage of his post-conviction proceedings and another such claim defaulted because the petitioner "failed to raise it in his post-conviction appeal").

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a claim procedurally defaulted due to a petitioner's failure to follow applicable state procedural rules in raising the claim in state court. **Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992); accord **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims"). "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] .. . 'impeded [his] efforts to comply with the State's procedural rule.'" **Maples v. Thomas**, 132 S. Ct. 912, 922 (2012) (alterations in original)

(quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991)).  There is no exhaustive catalog of the objective impediments "and the precise contours of the cause requirement have not been clearly defined."  **<u>Ivy v. Caspari</u>**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Petitioner has not demonstrated any cause for his failure properly to present to the state courts the claims in grounds one through three.  Because no cause has been established, it is unnecessary to consider whether Petitioner has demonstrated prejudice.  **<u>Abdullah v. Groose</u>**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

The merits of Petitioner's defaulted claims may be reached, despite the absence of a showing of cause and prejudice for his procedural default, if he establishes that a failure to consider the claims' merits will result in a fundamental miscarriage of justice.  That exception to a claim's procedural bar "requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted."  **<u>Abdi v. Hatch</u>**, 450 F.3d 334, 338 (8th Cir. 2006).  Petitioner must show not only new evidence, but "that 'it is more likely than not that no reasonable [fact-finder] would have convicted him in light of th[at] new evidence.'"  **<u>Osborne v. Purkett</u>**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)); <u>accord</u> **<u>House v. Bell</u>**, 547 U.S. 518, 536-39 (2006) (<u>Schlup</u> standard applies to determine whether defaulted claims in a first federal habeas petition should be considered based on actual innocence).  Evidence is "new" for purposes of this test "if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'"  **<u>Osborne</u>**, 411 F.3d at 920 (quoting <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001)).  "'Without any new evidence of innocence, even the existence of a

concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting <u>Schlup</u>, 513 U.S. at 316).

Petitioner has not submitted any new evidence of his actual innocence so as to permit this Court to consider the merits of Petitioner's defaulted claims.

Under the circumstances, grounds one through three are procedurally barred due to Petitioner's procedural default and failure to demonstrate either cause and prejudice or a fundamental miscarriage of justice to support consideration of the merits of those procedurally barred claims. Therefore, the undersigned will deny those claims without further consideration of their merits.

<u>Merits (Ground Four).</u> For ground four, Petitioner seeks habeas relief on the ground he was deprived of his right to testify in that his trial attorney failed to advise him that the decision to testify was his to make. Respondents counter that the Missouri Court of Appeals' findings of fact made in rejecting this challenge in Petitioner's post-conviction appeal are presumed correct, and that court's decision was not based on an unreasonable determination of the facts in light of the evidence presented.

<u>Standard of Review.</u> "In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions." **Lomholt v. Iowa**, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams v. Taylor**, 529 U.S. 362, 413 (2000) ("**Taylor**"). If the state court's decision is not "contrary to" clearly established law, then the standard of "unreasonableness" applies and is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" **Williams v. Roper**, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." **Taylor**, 529 U.S. at 407-08; see also **id.** at 413. "The unreasonable application inquiry is an objective one." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues

its decision on the merits. **Greene v. Fisher**, 132 S. Ct. 38 (2011) (relying on <u>Cullen</u>, <u>supra</u>); accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." **Ryan v. Clarke**, 387 F.3d 785, 790 (8th Cir. 2004) (internal quotation marks omitted) (quoting <u>Jones v. Luebbers</u>, 359 F.3d 1005, 1011-12 (8th Cir. 2004)). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at

either the trial or appellate levels.  **Smulls**, 535 F.3d at 864-65.

A defendant in a criminal case has a constitutional right to testify on his or her own behalf.  **Rock v. Arkansas**, 483 U.S. 44, 51-53 (1987).  Moreover, the defendant "has the ultimate authority" to decide "whether to . . . testify in his or her own behalf."  **Jones v. Barnes**, 463 U.S. 745, 751 (1983) (citing Wainwright v. Sykes, 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring)).  Where a state court's findings of the attorney's advice regarding the right to testify are clearly supported by the record, a federal heabeas court should "not second guess them."  **Frey v. Schuetzle**, 151 F.3d 893, 898 (8th Cir. 1998) (a pre-AEDPA federal habeas proceeding).

The Missouri Court of Appeals deferred to the credibility determinations made by the post-conviction motion court and concluded that there was no credible evidence that Petitioner's trial attorney failed to inform him that it was his ultimate decision to testify at trial.  The state appellate court specifically found credible Petitioner's trial attorney's testimony that she had discussed Petitioner's right to testify with him, that she recommended that he testify under the circumstances of the case, and that he chose not to testify.  The state appellate court also expressly found not credible Petitioner's testimony that his trial attorney did not allow him to testify.

We defer to the state court's credibility determinations and presume those and the other findings of the state courts are correct unless Petitioner rebuts those findings with clear and convincing evidence.  Here, Petitioner has not provided any evidence, much less clear and convincing evidence, to rebut the factual findings, including the credibility findings, of the state

court. Therefore, the state court's factual findings are presumed correct. The state court decision is an unreasonable determination of the facts in light of the evidence presented only when the state court's presumptively correct factual findings are not supported by the record. Having reviewed the available record, including in particular the transcript of the evidentiary hearing before the post-conviction motion court, the Court concludes that the state court's presumptively correct factual findings are clearly supported by the record. The state court reasonably determined that Petitioner's trial attorney told him that the decision whether to testify was for him to make and recommended that Petitioner testify during trial, which advice Petitioner chose not to follow. The state court's decision to that effect was not an unreasonable determination of the facts in light of the evidence presented, nor an incorrect or unreasonable application of clearly established federal law.

## CONCLUSION

The Court will deny Petitioner's federal habeas petition because the first three grounds for relief are procedurally barred and the fourth ground lacks merit.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Jay Cassady, Warden of the JCCC where Petitioner is incarcerated, is **SUBSTITUTED** for the originally named Respondent.

**IT IS FURTHER ORDERED** that Chris Koster, the Attorney General for the State of Missouri, is **ADDED** as a Respondent in this federal habeas proceeding.

**IT IS FURTHER ORDERED** that the state trial court legal file, Resp'ts Ex. A, shall be filed and maintained **UNDER SEAL**.

**IT IS FURTHER ORDERED** that the Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FINALLY ORDERED** that no certificate of appealability shall issue.  28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.


 /s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE


Dated this 24th day of March, 2015.